---

# In re MING.

[Submitted September 26, 1894. Decided November 8, 1894.]

EXECUTORS AND ADMINISTRATORS—*Suspension of executrix.*—The relator, as executrix of the last will and testament of her deceased husband, made a report showing the condition of the estate of the decedent, which report was considered, settled, and approved. No report was thereafter made until five years later, when, in obedience to an order of court calling for a report of the condition of said estate, the said executrix presented one, covering the intervening period, and this report was not only uncontested, but was approved by all of the heirs interested in the estate, all of whom were of the age of majority. Subsequently two of the heirs brought suit to set aside a mortgage on the estate, executed by them when of age, charging said executrix with exercising undue influence over them in procuring the execution of said mortgage. *Held,* that neither the latter fact, coming to the knowledge of the court, nor the showing in reference to said report, presented any ground for the suspension or removal of the executrix, and that her temporary removal by peremptory order of the court on such grounds was error. (DE WITT, J., dissenting.)

SAME—*Appointment of special administrator.*—By the same order whereby the said executrix was removed the court appointed the public administrator "as special administrator to take charge of said estate, and execute the provisions of said will in reference to said estate," and ordered "that special letters of administration, with the will annexed, issue to him." *Held,* that in appointing the public administrator as special administrator, or in ordering the estate into the public administrator's charge in this case, while one next of kin, to whom the statute had given prior right to the office of both general and special administrator, sought such appointment, the court exceeded its jurisdiction. (*State ex rel. Murphy* v. *Judge of Second Judicial District Court,* 10 Mont. 401, distinguished. (DE WITT, J., dissenting.)

SAME—*Same—Statute construed.*—Under the provisions of sections 55 and 97 of the Probate Practice Act, when occasion arises for the appointment of a special administrator, the court must appoint from those in right of succession thereto, as therein provided, if they do not waive their right by failing to apply, or by failing to insist upon or prosecute their application, or in some man-

ner consenting to the appointment of another by the court. The clause of section 95 of the Probate Practice Act, which, after enumerating the occasions for the appointment of a special administrator, provides: "Or he (the district judge) may direct the public administrator of his county to take charge of the estate," is applicable to cases wherein no one is entitled to general or special appointment, precedent to the public administrator. In such cases the court would not be absolutely bound to appoint a special administrator, but might direct the estate into the charge of the public administrator.

ORIGINAL proceeding. Application for writ of *certiorari*, and also for writ of *habeas corpus*. Action of the court below ordered to be annulled, and the petitioner in the writ of *habeas corpus* to be discharged from custody.

*J. W. Kinsley,* and *Blake & Penwell,* for Relator, on application for writ of *certiorari.*

The failure to file accounts was **not** a cause for the removal or suspension of relator as executrix. (*In re Moore,* 83 Cal. 586; *Cleland* v. *Bideman,* 5 La. Ann. 564; *Succession of Head,* 28 La. Ann. 800; *Cooper* v. *Cooper,* 5 N. J. Eq. 10.) The jurisdiction of district and probate courts must be kept distinct. (*Haverstick* v. *Trudel,* 51 Cal. 433; *Smith* v. *Westerfield,* 88 Cal. 378; *Richards* v. *Westmore,* 66 Cal. 365; *In re Alliger,* 65 Cal. 228; *Crow* v. *Day,* Wis. 637; *Estate of Burton,* 64 Cal. 428; *Campbell* v. *Rankin,* 99 U. S. 261; *Glacius* v. *Fogel,* 88 N. Y. 441.) The court could not remove an executrix, except for statutory reasons, having "no right to add to the disqualifications prescribed by the legislature for such cases" (*Levering* v. *Levering,* 64 Md. 410; *In re Bauquier,* 88 Cal. 302; *Dowdy* v. *Gorham,* 42 Miss. 459; *Vail* v. *Givan,* 55 Ind. 60; *In re Welch,* 86 Cal. 180; *Wales* v. *Willard,* 2 Mass. 120; *Riggs* v. *Cragg,* 89 N. Y. 490; *Neighbors* v. *Hamlin,* 78 N. C. 42); and could not complain at the contents of a report made by an executrix under oath, nor direct how it should be made. (*Cowdin* v. *Perry,* 11 Pick. 511; *In re Bullock's Estate,* 75 Cal. 419.) A report filed by an executor under oath is presumed to be correct (Schouler on Executors and Administrators, § 521; *Poole* v. *Munday,* 103 Mass. 174); and only interested parties can be heard to complain. (*Garwood* v. *Garwood,* 29 Cal. 519; *Estate of Halleck,* 49 Cal. 115; *Suttle* v. *Turner,* 8 Jones, 404; *White* v. *Spaulding,* 50 Mich. 22.) The heirs, being of age, are presumed to know the effect of their indorsement of the acts of

their mother, the executrix, and are absolutely bound thereby. (*Loomis* v. *Armstrong*, 63 Mich. 355; *Foote* v. *Foote*, 61 Mich. 181; *Lyle* v. *William*, 65 Wis. 231; *Wagner's Estate*, 119 N. Y. 28; *Niles' Estate*, 113 N. Y. 547; *Bumb* v. *Gard*, 107 Ind. 575; *Perry* v. *Wooton*, 5 Humph. 526; Smith's Probate Law, 236.) Where there is a will there must be an executor or an administrator with the will annexed (*Landers* v. *Stone*, 45 Ind. 408); and until the removal of an administrator already appointed no new administrator can be appointed. (*Estate of Keane*, 56 Cal. 409.) If letters are issued they constitute the person to whom they are issued the administrator. (*Estate of Hamilton*, 34 Cal. 468; *Ryno* v. *Ryno*, 27 N. J. Eq. 524.) An administrator " with the will annexed " is a different officer from one temporarily put " in charge of an estate." (Rev. Stats., § 51, p. 288; Gary's Probate Law, § 284, p. 105; *Nugent* v. *Cloon*, 117 Mass. 219; *Bradford* v. *Monks*, 132 Mass. 407; *Parker* v. *Converse*, 5 Gray, 338; *Olwine's Appeal*, 4 Watts. & S. 492; *Saunderson* v. *Stearns*, 6 Mass. 39; *Peebles* v. *Watt*, 9 Dana. 102; 33 Am. Dec. 531; Woerner's Probate Law, §§ 178, 245; *McCauley* v. *Harvey*, 49 Cal. 505; *Wait* v. *Huntington*, 40 Conn. 10.) As bearing upon the appointment of a special administrator the following authorities are cited. (Rev. Stats. § 97, p. 296; *In re Carpenter*, 73 Cal. 202; *In re Fisher*, 15 Wis. 611; Gary's Probate Law, § 315; *Smith* v. *Rice*, 11 Mass. 513; *Jenks* v. *Howland*, 3 Gray, 537; *Estate of Wooten*, 56 Cal. 326; *Estate of Pacheco*, 23 Cal. 480.)

*J. W. Kinsley, George F. Shelton*, and *Blake & Penwell*, for Petitioner, on application for writ of *habeas corpus*.

I. The court below had no jurisdiction to appoint referees in the case of the petitioner, the statutes specifying the conditions under which the court can appoint referees in probate proceedings being inapplicable. (Comp. Stats., div. 2, §§ 164, 165, 268.) " The power of the court to order a reference in an action at law without the consent of the parties is not derived from the common law, but is dependent wholly upon statute." (20 Am. & Eng. Ency. of Law, 664; also *Williams* v. *Benton*, 24 Cal. 426; *Hastings* v. *Cunningham*, 35 Cal. 549.)

II. The language of the statute is mandatory, that the

issues relating to the removal of an executrix " must be heard and determined by the court," and, in effect, prohibits the appointment of referees to " so investigate and report thereon." (Comp. Stats., div. 2, § 115.)

III.  The referees were not judicial officers and had no authority to compel the petitioner to testify before them.

IV.  The account, being accompanied by vouchers, to which there were no objections or exceptions by any person, and due notice of a hearing having been given, the court exceeded its jurisdiction in appointing referees to examine and report concerning said report and as to the fitness of the executrix to hold her trust.  (*Boughton* v. *Flint*, 74 N. Y. 485; *Heath's Estate*, 58 Iowa, 36; *Poole* v. *Munday*, 103 Mass. 177; *Riggs* v. *Cragg*, 89 N. Y. 490.)

V.  All the heirs of the estate of the deceased, being satisfied with the acts of the executrix, and there being no other interested parties, the account as rendered and approved by the heirs is presumed correct and binding on them, and there was nothing for the court to investigate.  (Comp. Stats., div. 2, § 269; *Cowdin* v. *Perry*, 11 Pick. 511; *Reynolds* v. *Brumagim*, 54 Cal. 257; *Perry* v. *Wooton*, 5 Humph. 526; *Harris* v. *Seals*, 27 Ga. 585; *Loomis* v. *Armstrong*, 63 Mich. 355; *Foote* v. *Foote*, 61 Mich. 181; *Wagner's Estate*, 119 N. Y. 28; *Niles' Estate*, 113 N. Y. 547; *Bumb* v. *Gard*, 107 Ind. 575; Gary's Probate Law, par. 28, pp. 13, 14; Schouler on Executors and Administrators, §§ 332, 521.)

VI.  The books demanded were "papers" within the meaning of the state constitution, which could not have been inspected by the referees or the court without the consent of the petitioner.  (Const., art. 3, § 7; U. S. Const. Amendment, 4; *Boyd* v. *United States*, 116 U. S. 616; *Pacific Ry. Commission*, 12 Saw. 574; *Sargent* v. *Sanborn* (N. H. March 15, 1890), 25 Atl. Rep. 541.)

Harwood, J.—This writ of *habeas corpus* is accompanied by a writ of *certiorari*, whereby all the proceedings leading up to the order for the commitment of relator are brought before this court.   Thereby it appears that John H. Ming died in the year 1887, leaving, as heirs, Katherine L., widow, and John

H. and James L. Ming, sons of decedent, to whom decedent had, by last will and testament, bequeathed all his estate, and appointed Katherine L. Ming executrix of said will; that said will was duly admitted to probate, notice to creditors given, and other preliminary matters and proceedings as to said estate, required by law, were attended to; that in 1889 the executrix made a report showing the condition of said estate, which report, after notice, as provided by law, was considered, settled, and approved; that no report was thereafter made until about February, 1894, when, in obedience to an order of court calling for a report of the condition of said estate, said executrix presented one, covering the period intervening since the first report, made in 1889; that said other two heirs, John H. and James L. Ming, both being of the age of majority, joined in approving the last-mentioned report. In their approval thereof these heirs say: "We have been at all times familiar with the executrix's management of this estate; have been consulted freely by her in the matter of sale of personal and real estate, and all rental of real estate, from which the income has been derived; and have also approved, and hereby approve, her management in this estate in that respect. We have also been familiar with the several items of expenditure, as they have been made; have been consulted freely by her at the time and under the circumstances when the same were made; and we have approved, and do hereby approve, all her acts in regard thereto, and we hereby give our unqualified assent and approval of all her acting as executrix, as shown herein, and of the expenditures contained in this report, and mutually join in the request that this, her report, be allowed, and that she be permitted by this court to retain from the future income of said estate the present indebtedness of two hundred and fifty-three dollars and twenty-two cents, now shown to be due her, and such other items of expenses as she may have incurred, or may hereafter incur, in the interest and for the benefit of this estate." This report was not only accompanied by the approval of all heirs interested in said estate (all of them being of the age of majority), but no creditor, or any one whosoever claiming to be interested, has made any objection thereto since the filing thereof. Nor does there appear to have been any inves-

tigation, consideration, or other action taken by the court in respect to said last report (Probate Code, §§ 265–68), until after the peremptory order removing the executrix was made. But, on or about July 23, 1894, an order was made by the judge of the probate court peremptorily removing said executrix, basing said order, as appears therefrom, upon the ground that said executrix had not made annual reports of the condition of said estate, from time to time, for the years intervening between 1889 and the said last report; and, upon the further ground, that it had come to the knowledge of the judge, exercising probate jurisdiction, through the files and records of the district court, within and for Lewis and Clarke county, that an action had been commenced in that court by John H. and James L. Ming against the First National Bank of Helena, and the relator, Katherine L. Ming, for the purpose of obtaining a decree canceling a certain mortgage executed by Katherine L., John H., and James L. Ming, of their interests in certain property of said estate, to said bank, to secure certain indebtedness, the ground alleged for cancellation of said mortgage being that Katherine L. Ming had used undue influence with John H. and James L. Ming to induce them to join as parties thereto. Thereafter the relator, Katherine L. Ming, was cited· to appear before the probate court; and the court appointed three referees to investigate and report upon the account of the executrix, last filed, and generally to inquire into the management of said estate by the executrix, and also to inquire into the question of the fitness and competency of said executrix to remain in that office, and report upon those questions. Thereupon the referees, in proceeding with that inquiry, called said executrix as witness, and, having questioned her generally in regard to her last account and report upon said estate, required her to produce all books in her possession wherein were entries or memoranda of transactions or accounts of expenditure in reference to said estate. The executrix replied that, if proper objection or contest were made as to any item or items of the account shown in said last report, she would establish the same by proof, but, without such objection, she declined, through her counsel, to produce books and enter upon a showing on the inquisition· of the referees,

where no question, objection, or contest had been made. Report of this conduct of the executrix having been made to the court, an order was made by the court committing the executrix for contempt for refusing the demand of the referees as aforesaid.

Counsel for relator contend that, by the terms of the will, said estate was transferred to the executrix as a trustee, and in that capacity alone she was holding and managing the same until the time for final distribution thereof; and that after the probate of the will, the filing and recording of the inventory and appraisement, the notice to creditors, and the report showing settlement of their claims, etc., as was shown by the executrix's report of 1889, her further possession and management of said estate was in the capacity of trustee solely; and it is set forth in the application for writ of *certiorari* that she neglected to make reports of the condition of said estate to the probate court after the report of 1889, because her counsel advised her that no reports were required by law as she was merely trustee in charge of the property of said estate, awaiting time for distribution. But we shall not enter upon the consideration of that point, because we deem it unnecessary in this proceeding. This was not a case for reference. The executrix made report concerning the affairs of said estate, covering the period intervening since her last report of 1889; and the same was not only uncontested, but was accompanied by the approval of all the heirs interested in said estate, all of whom were of the age of majority. Such was the showing, and therein no ground appears, in reference to said report, for the suspension or removal of the executrix; nor was there any objection raised in reference to the report on which an issue was formed for reference. (Probate Practice Act, §§ 113–15, 267–70; *In re Russy's Will,* 14 N. Y. Supp. 177.) Nor were the allegations contained in the pleadings, on file in the district court as aforesaid, ground for the removal of the executrix. The matters there set forth pertained to transactions wherein, as alleged, the heirs interested in this estate have joined in executing a mortgage of their respective interests in certain property thereof, to secure certain indebtedness. If competent to act a person interested has power to assign or convey away his or her interests in an es-

tate as a private transaction. Whether that was done in legal form, and free from conditions which might invalidate the mortgage, are questions to be tried in that litigation, where the same are raised for adjudication. That controversy pertains to private transactions, apparently, by individuals who were of the age of majority, and, so far as shown by any adjudication, competent to act in that behalf. But if any fraud was perpetrated therein, which is not to be presumed at this stage of the action, that question should be adjudicated in that action. If the parties to said mortgage should be found to have made a valid encumbrance upon their interests, that finding would be based upon the fact that they were competent to act in that behalf. And if it were found that they had power to act, and had made a valid and binding transaction, in respect wherein their action was subject to their own control, it certainly would not be ground for depriving the executrix of her office in respect to said estate. Whatever may be the result of that adjudication the questions involved therein should be left to the adjudication of the court having jurisdiction of that action.

By the same order whereby the executrix was temporarily removed the court appointed Joseph N. Kenck, public administrator "as special administrator to take charge of said estate, and execute the provisions of said will in reference to said estate," and ordered "that special letters of administration, with the will annexed, issue to him." Immediately thereafter, and as soon as said order came to the knowledge of the Ming brothers, John H. Ming petitioned the court to revoke the appointment of Kenck as such special administrator, and at the same time made formal application for appointment of John H. as special administrator of said estate. In that petition for such appointment John H. Ming was supported by James L. and Katherine L. Ming. But it appears that petition was not entertained, or, as it is alleged in these proceedings, no action was taken thereon, although the same was presented to the court, and the court was asked to hear and act upon said petition. Thereupon writ of *certiorari* was sued out on behalf of John H. and James L. Ming, to review the

order of the court making such appointment of special administrator; relators insisting therein that the court had exceeded its jurisdiction in refusing to appoint John H. Ming as special administrator in case any exigency had arisen requiring the appointment of a special administrator of said estate. This proceeding was argued and submitted for determination along with the *habeas corpus* proceeding.

There being no appeal from an order appointing a special administrator, it has been held that *certiorari* would lie to review the jurisdictional question involved in such appointment. (Probate Practice Act, § 97, Comp. Stats., p. 296; *In re Murphy, Pub. Admr.*, 11 Mont. 401.) On the subject of appointment of a special administrator the statute provides, in section 55 of the Probate Practice Act, that letters of administration "must be granted to some one or more of the persons hereinafter mentioned, who are respectively entitled thereto, in the following order: 1. The surviving husband or wife, or some competent person whom he or she may request to have appointed; 2. The children; 3. The father and mother; 4. The brothers," etc. This section prescribes, in ten subdivisions, the order in which certain persons have a right to succeed to the administration of an estate. Section 95 of the same act provides that "when there is delay in granting letters testamentary or of administration from any cause, or when such letters are granted irregularly, or no sufficient bond is filed as required, or when no application is made for such letters, or when an administrator or executor dies or is suspended or removed, the probate judge must appoint a special administrator to collect and take charge of the estate of the decedent, in whatever county or counties the same may be found, and to exercise such other powers as may be necessary, for the preservation of the estate, or he may direct the public administrator of his county to take charge of the estate." And section 97 of the same act further provides: "In making the appointment of a special administrator the probate judge must give preference to the person entitled to letters testamentary or of administration, but no appeal must be allowed from the appointment." Under these statutory provisions we think it clear that, when

occasion arises for appointment of a special administrator, the court must appoint from those in right of succession thereto, as provided by statute, if they do not waive their right by failing to apply, or by failing to insist upon or prosecute their application, or in some manner consenting to the appointment of another by the court; and the court is not at liberty to pass over those to whom the statute gives the prior right of both general and special administration, and appoint the public administrator as special administrator, or order the estate into the charge of the public administrator, when an exigency arises calling for appointment of a special administrator. The only ground for contention that the court has power or discretion to ignore those standing in prior right to administer, either generally or specially, and put the estate into possession of the public administrator, is the clause of section 95, which, after enumerating the occasions for the appointment of a special administrator, provides: "Or he may direct the public administrator of his county to take charge of the estate." No doubt that is a wise provision, for there are cases wherein no one is entitled to general or special appointment, precedent to the public administrator. In such cases the court would not be absolutely bound to appoint a special administrator, but might direct the estate into the charge of the public administrator. But sections 55 and 97 declare, without condition or proviso, that when occasion arises for appointment of an administrator, either general or special, the court *must appoint* from the heirs and relatives of decedent, in the order prescribed; and to hold that said clause of section 95 empowered the court, whenever occasion arose for appointment of a special administrator, to put the estate in charge of the public administrator, notwithstanding the heirs and distributees of decedent applied, would, in effect, insert into section 97, following the statutory declaration that the court, "in making appointment of special administrator, must give preference to the persons entitled to letters testamentary or of administration," a proviso to this effect: "Unless the court deems it preferable to put the estate into the charge of the public administrator." No such proviso is found there. Moreover, the provisions of all the sections of the statute on this subject, read together, clearly

manifest an intention on the part of the legislature that the "next of kin entitled to share in the distribution of the es ate" in the order prescribed shall have a right, precedent and paramount to strangers, to administer the estate in all cases, either as general or special administrator.

In relation to the Davis estate occasion arose for the appointment of a special administrator. There were next of kin entitled to apply for such appointment, such as brothers and nephews of decedent; but the court went outside of those relatives and distributees of the estate, and appointed a person whom the court deemed suitable for that office. Thereupon all the heirs and distributees who could have demanded such appointment precedent to the one appointe[1], as well as to the public administrator, tacitly acquiesced in the appointment made by the court. One of the heirs who had applied for appointment as special administrator ceased to prosecute his petition, and no other relative of decedent who might have claimed such appointment applied for the same. Nothwithstanding this tacit or implied concurrence of all the heirs in the appointment made by the court, the public administrator sought to overcome that arrangement, and compel appointment of himself. The conclusion and holding of this court in that case (*State ex rel. Murphy,* 11 Mont. 401) was that, as between the public administrator and the appointee, under such conditions, the public administrator was not entitled to the appointment. That case involved no such question as is here presented; nor was there involved therein the consideration of the question whether the appointment of the public administrator (if it had been made in that case) could have been sustained against the demand of heirs and distributees for appointment, in the order provided by statute. But to sustain the appointment of the public administrator in this case would be to hold that, in case the court had put the vast estate of Andrew J. Davis into the charge of the public administrator, when occasion arose for the appointment of a special administrator, that appointment must have been sustained against the demand of the heirs and distributees for the appointment, even though all of them joined in petitioning the court for the appointment of one or

more of them, as provided by statute. Such holding, we
think, would be entirely contrary to the spirit and intendment
of the statute upon this subject; and therefore we hold that, in
appointing the public administrator or special administrator,
or in ordering the estate into the public administrator's charge
in this case, while one next of kin, to whom the statute had
given prior right to the office of both general and special ad-
ministrator, sought such appointment, the court exceeded its
jurisdiction.

As a result of our consideration of the proceedings here
presented it will be ordered: 1. That petitioner in the writ
of *habeas corpus*, Katherine L. Ming, be discharged from cus-
tody; 2. That the order of the probate court appointing
Joseph N. Kenck as special administrator of said estate, with
the will annexed, be vacated and set aside.

PEMBERTON, C. J., concurs.

DE WITT, J., dissenting.—The application of Mrs. Ming
for writ of *certiorari*, on July 28, 1894, and her application
for writ of *habeas corpus*, on August 7, 1894, involved some
of the same facts. Although commenced at different times,
they were argued together, and may as well be treated in one
opinion. I will follow the method of the prevailing opinion
in that respect. I will examine the question of the *certiorari*
first. It appears that the district judge temporarily removed
or suspended Mrs. Ming as executrix, and appointed Joseph
N. Kenck, public administrator, as special administrator, or,
in effect, directed the public administrator to take charge of
the estate. (Probate Practice Act, §§ 95, 113.) A writ of
*certiorari* was issued by this court to review that order. I
think that the question upon this *certiorari* is whether the
district judge had jurisdiction to make the order directing
Kenck to take charge. This court said in the *certiorari*
case of *State ex rel. Murphy* v. *The Court*, 11 Mont. 405:
" We have only to inquire whether the application is properly
before us, and, if so, whether the district judge exceeded his
jurisdiction." I think that he had jurisdiction to make the
order which he did in this case. Section 113 of the Probate

Practice Act is as follows: "Whenever the probate judge has reason to believe, from his own knowledge or from credible information, that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste or embezzle, the property of the estate committed to his charge, or has committed, or is about to commit, a fraud upon the estate, or is incompetent to act, or has permanently removed from the territory, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must, by an order entered upon the minutes of the court, suspend the powers of such executor or administrator, until the matter is investigated." The probate judge is now the district judge. Under this statute, if the district judge has reason to believe, *from his own knowledge or from credible information,* that the executrix is not a proper person to continue in the performance of her duties, for any of the reasons set forth in the said statute, I think that he has jurisdiction conferred by this section to suspend her powers until investigation is made. He may err in his reasons to believe; and, if he discover such error, he may correct it upon the final investigation. But, if he has this reason to believe, he has the jurisdiction; and, if he has the jurisdiction, *certiorari,* I think, will not review his action. (*State ex rel. Murphy, supra.*) Without commenting upon the discreet or indiscreet exercise of his jurisdiction in suspending Mrs. Ming, I think that the district judge had sufficient *reason to believe* that she was an improper person to continue to execute the office of executrix. He had before him Mrs. Ming's report as executrix, upon which the other heirs, John and James, had indorsed their approval, filed February 1, 1894. He also had before him the pleadings in an action filed January 17, 1894, in the court of which he was judge. In that action John and James Ming were plaintiffs, and Mrs. Ming and the First National Bank were defendants. In their complaint in that action John and James charge their mother, Mrs. Ming, with exercising undue influence over them in procuring them to execute a mortgage upon their property, or a large portion thereof, to the First National Bank for the sum of about ninety thousand dollars. The action was for the cancellation of that mortgage. Therefore

the district judge found in his court that on February 1, 1894, John and James Ming approved of all of the acts of their mother, as executrix, and that also, within sixteen days of that date, on January 17, 1894, they, under oath, accused her of working a fraud upon them. They seem to blow hot and cold within a very few days. In one breath they charge their mother with a ninety thousand dollar fraud, and in the next they approve of all her acts as executrix. These facts were all set down in writing, and solemnly filed in the district court, over the signatures of John and James Ming. I should think that this was fairly "credible information" (Probate Practice Act, § 113); and, furthermore, I think it was knowledge and information which gave the district judge, under section 113, jurisdiction to suspend Mrs. Ming. To be sure, the sons, John and James, did not ask her suspension; but section 113 says that the district judge *must* suspend the executrix, not simply upon complaint by any one, but of his own motion, "whenever he has reason to believe, from his own knowledge, or from credible information," etc. The California supreme court said, in *Deck's Estate*, 6 Cal. 669: "The probate judge, as the general supervisor and guardian of the estates of deceased persons, has power, by law, to suspend or remove an administrator 'whenever he has reason to believe, either from his own knowledge or from credible information, that such administrator has fraudulently wasted or mismanaged the estate, or is about to do so, or has become incompetent to manage it.' (Comp. Laws, §§ 281, 283, p. 418.)" It is observed that the California statute as to the ground upon which the court may act is the same as ours. That case came up on appeal, and the court said: "With the exercise of this power, so necessary to the protection and security of estates, an appellate court should not interfere, unless it be clearly shown that there has been a gross abuse of discretion by the probate court."

The case before us is on *certiorari*, and not appeal, as was the California case. I cannot find it in my mind to doubt that the district judge had jurisdiction to suspend Mrs. Ming. Having suspended the executrix, he appointed Joseph N. Kenck, public administrator, as special administrator, and

ordered that he take charge of the estate. This order is attacked on *certiorari* as being without jurisdiction. If the district court had jurisdiction it is found in section 95 of the Probate Practice Act, which provides that, when an administrator or executor is suspended, the district judge must appoint a special administrator to collect, take charge of, etc., or he may direct the public administrator of his county to take charge of the estate. It is to be kept in mind that on this *certiorari* the question is whether the judge had jurisdiction to order the public administrator to take charge. I think that he had such jurisdiction under section 95 and other sections, as construed in *State ex rel. Murphy, supra.* That was a case of vast magnitude, and it was decided by unanimous court, and not without able argument and due deliberation. I feel satisfied with the reasoning in that case to-day, as I did when it was decided. I think this *certiorari* cannot be sustained without overruling the Murphy case. I thought so when the application for the writ was made, and for that reason ventured to decline to join in the order for its issuance. The statutes under consideration are fully set out in the statement made in the Murphy case, and may be here referred to without repeating them. In that case the court had appointed as special administrator one James A. Talbot, under the tenth clause of section 55, Probate Practice Act, as " a person legally competent." The public administrator contested this appointment, claiming that it should have been given to him. This court said: " When there is a delay in appointing an administrator the district judge, for the temporary protection of the estate, may do one of two things (§ 95): 1. He may direct the public administrator to take charge of the estate; or, 2. If he does not so direct he must appoint a special administrator. There seems to be no ambiguity in this provision. A discretion is given to the district judge to adopt one of two courses. In the case at bar the judge exercised this discretion, and exercised it by not directing the public administrator to take charge of the estate. The judge took the other alternative of the statute, and proceeded to the appointment of a special administrator. He thereby did some thing wholly inconsistent with directing the public

administrator to take charge of the estate, and thereby, as well, passed upon and decided the question of directing the public administrator to take charge, and decides it adversely to such taking charge by the public administrator. This was an act of judicial discretion, of which no abuse is shown, and of which the public administrator cannot complain." We held in that case that it was in the discretion of the district judge to appoint the public administrator; that is to say, in effect, to order him to take charge of the estate, or to appoint one of the persons named in the clauses set forth in section 55. It is true that the public administrator appears as eighth in the classes named in section 55. As to that, we said, further, in the Murphy case: "Having passed and settled this matter, and proceeding to the other alternative allowed the judge, under section 95, viz., the appointment of a special administrator, which the judge could do without notice to any one, and out of term time (§ 96), the judge finds that section 97 provides that preference must be given in such appointment to the persons entitled to general administratorship, in the order named in section 55. In that order the public administrator appears as eighth. But the law has already provided in the other alternative in section 95 that the public administrator, as to temporary care of the estate, stands ahead of all classes of persons named in section 55, if the judge chooses to put the estate into his hands. A special provision is thus made for putting the public administrator in charge—a special provision which takes him out of the general classes of administrators. If it is the judgment of the judge that the public administrator should take the estate the judge may so direct, to the exclusion of all claimants to special letters. Now, when the judge passes the public administrator, and practically says, 'I will not appoint him, as I may, and determine to proceed under the other alternative of section 95, and appoint a special administrator,' then, in making his selection from the classes of persons named in section 55, must he again adjudicate upon the claims of the public administrator—a question which he has already decided under an ampler provision of the law allowing him to give to him the estate? Must he again say whether or not he will give him charge of the estate when he has already settled

the matter in the exercise of his discretion, and said he would
not do so? We think not. The judge had the amplest and
largest powers to direct the estate into the hands of the public
administrator, to the exclusion of every one. He did not
exercise that power. It cannot be said that, the judge having
deliberately ignored the public administrator, when he had
full power to recognize him, he must again consider his claim
when proceeding under the other alternative of the statute.
This would be equivalent to holding that the judge *may*, if he
chooses, make the public administrator the temporary custodian
of the estate; but, if he does not do so, as he *may*, then, in
appointing a special administrator, he *must*, under certain con-
ditions, do the very thing which the other provision of the law
says he *may* do, and which, in his discretion, he has decided
not to do. We cannot agree to any such construction of the
statute. It would be a strain upon language approaching
a point of fracture. The correct view of sections 55, 96,
and 97 is that the public administrator is not in the list of
candidates for special administratorship, for the reason that
his claims for temporary custodianship of the estate are pro-
vided for in another separate portion of the section, by which
he is placed first in choice, if the judge desires him to take
charge." We thus held that the public administrator is read
out of the classes in section 55, and that, instead of there being
ten classes in that section, there are, indeed, only nine, after
dropping the public administrator from the list. This was so
held because the selecting of the public administrator for tem-
porary custodianship of an estate was separately and fully pro-
vided for, and it seemed not reasonable to believe that it was
intended that the court should consider him in the list named
in section 55, when the ample power was given to appoint him
under another and special provision. Therefore, the district
judge, when the temporary care of an estate is to be provided
for, has two divisions of persons to look to. The one division
is composed of but one person—the public administrator;
and the other division is composed of nine classes of persons
named in section 55—that is to say, nine classes, after exclud-
ing the public administrator from that list, for the reasons
above set forth. If the judge goes to the first division, there

is only one person for him to select; if he goes to the second division, then he must observe the priorities of the classes, as set out in section 55. This seems to me to be what was held in the Murphy case. Under this holding I do not think the language of the court in giving the public administrator charge of the estate is important. I do not think it is material whether the judge follows the language of the statute, and says, "It is directed that the public administrator of the county take charge of the estate"; or whether he uses the language of "appointing an administrator." The substance of the matter is that he goes to the one of two divisions of persons above set forth to select the temporary custodian of the estate. This is what the district judge did in this case. He had these two divisions of persons before him. He had discretion, under the law, to go to either division. He exercised his discretion in taking the public administrator. I think that he had jurisdiction to do this. He used his discretion within his jurisdiction. Of course, it may be said that a district judge may not be discreet or wise in his action in such a matter. But the legislature has intrusted him with this power, as it had the right to do; and, if the legislature places this discretion in the district judge, I do not know that any other tribunal has cause to criticise the legislative act. It may be that the district judge is the best depositary for such discretion. At all events, the legislature so thought, as it appears to me; and I do not feel like indulging in any presumptions that the district judges will abuse this discretion. There appears to be no showing here of the abuse of discretion, and, as was said in the California case above cited: "With the exercise of this power, so necessary to the protection and security of estates, an appellate court should not interfere, unless it be clearly shown that there has been a gross abuse of discretion by the probate court." I am therefore of opinion that the writ of *certiorari* should be dismissed. It may be noted, in passing, that the appointment is only a temporary matter. It is only for the purpose of having some one in charge pending an investigation, and until the regular administrator can be appointed, if a permanent removal is determined upon.

The *certiorari* being disposed of, as it seems to me it ought,

leaves to me the consideration of the *habeas corpus*. After suspending Mrs. Ming, and appointing Kenck temporary custodian, the court issued a citation to Mrs. Ming, under section 114 of the Probate Practice Act, requiring her to appear and show cause why her letters of executorship should not be revoked. She appeared and filed an answer to this order. I think the judge was pursuing the statutory authority invested in him by sections 114 and 115 of the Probate Practice Act, when making this citation and initiating this proceeding. The executrix had been suspended, as we have seen, an act within the jurisdiction of the court, as I am of opinion, and then properly followed the hearing under sections 114 and 115, to determine whether she should be removed permanently. The hearing was for this purpose. It was the duty of the court to ascertain whether Mrs. Ming should be permanently removed. If she were to be removed it would seem to be the duty of the court to ascertain whether there were facts which would demand her removal, or whether the facts were such that she should be retained in her office as executrix. The court thereupon made an order appointing referees to take testimony in the matter, and report their findings of fact. Upon the hearing before the referees matters arose which resulted in the executrix being committed for contempt; hence the *habeas corpus*. The question arises whether the court had authority to appoint the referees. If it had not, Mrs. Ming was guilty of no contempt in her conduct before the referees. Section 115 of the Probate Practice Act says: "The issues raised must be heard and determined by the court." Section 113, just preceding, had given the judge power to suspend the executrix temporarily. The statute seems to regard the suspension as perhaps an emergency matter, and conferred the power upon the judge; but, upon the question of the permanent removal, it guards against any implication that the district judge could, at chambers, go on with the hearing, and provides, as quoted, that the *court* shall hear and determine. I think the intention here is to distinguish the *court* from the *judge*, and require that a matter of such importance should be determined in open court, and not at chambers. I do not think that the last sentence of section 115 is intended to prohibit the

court from ordering a reference, if authority to do so appears elsewhere than in this section. The words "hear and determine" are words used in defining jurisdiction. All courts hear and determine the matters which come before them, including those matters as to which the court may unquestionably order a reference for its information. Even if there be a reference to hear evidence and report facts the court finally hears and determines the issue. Therefore, I think that section 115 was not intended to prohibit a reference in such a matter.

If it be suggested that no issue was raised here because the heirs had approved the executrix's account I think it may be replied that there is the same issue here as could ever occur when a proceeding arises under sections 113, 114, and 115. Here the judge, of his own motion, without complaint of any one, "from his own knowledge or credible information" (§ 113) suspends an executrix, and goes into a hearing as to whether such executrix should be permanently removed. As to whether the court had power to order a reference here, we find section 323 of the Probate Practice Act provides: "Except as otherwise provided in this title, the provisions of the Civil Practice Act of this state are applicable to and constitute the rules of practice in the proceedings mentioned in this title." Section 710 of the Code of Civil Procedure provides: "The provisions of this code, so far as applicable, shall govern the proceedings and practice in the probate courts of the territory in civil actions." Section 283 of the Code of Civil Procedure provides: "A reference may be ordered, upon the agreement of the parties, filed with the clerk, or entered on the minutes. . . . ." Then follow subdivisions. Section 284 of the Code of Civil Procedure provides: "When the parties do not consent the court may, upon the application of either, or of its own motion, direct a reference in the following cases: 1. . . . . 2. . . . . 3. . . . . 4. When it is necessary for the information of the court in a special proceeding." The court, in ordering a reference, recites as follows: "And whereas, on or about the twentieth day of January, 1894, she filed a very voluminous report, containing many accounts, which said report was so extensive, covering a long period of time as in the judgment of this court to demand a reference; and whereas, in

the matter of the investigation of her fitness to continue her duties as executrix of this estate, as it appears, many accounts will have to be examined, and much evidence taken, which also, in the judgment of this court, is a proper subject for reference." It is then ordered that the referees so appointed "do examine in full the transactions set forth in the account, which the said Catherine L. Ming claims to be a full, true, and correct history of her transactions as executrix, and to take her evidence, and the evidence of such other persons as they may deem necessary, touching the transactions and the matters set forth in said account; and that the said referees do also take evidence upon the question of whether the said executrix is competent to manage the affairs of said estate, and upon the question of whether or not the said Katherine L. Ming has mismanaged said estate, or wasted any of the assets belonging to the same, or appropriated or misappropriated any of the funds thereof, and generally as to whether she has conducted herself in accordance with the laws of Montana regulating the duties of executors of estates." I think that these matters set forth in the order of reference were in the language of section 284 of the Code of Civil Procedure, necessary for the information of the court, and that, therefore, the court was empowered to make a reference in order to obtain the information as to these matters. The referees were to determine nothing. It was left to the court, after the referees collected the facts, to both hear the facts so collected and determine the matter. The referees were to examine into Mrs. Ming's management of the estate. Their appointment was not like an ordinary one to examine an account. The issue was as to whether Mrs. Ming should be removed. The examination of her accounts was an incident to that issue, or was evidence in the determination of such issue. I cannot see any valid objection, under the law, to the investigation as to her removal, or to the appointment of the referees to collect the evidence and report the facts to the court. In this respect I also regret that I am compelled to differ from my associates.